**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHEYENNE H., by and through her parents, Elizabeth H. and David H., and ELIZABETH H. and DAVID H. individually,<br><br>Plaintiff,<br><br>v.<br><br>PLEASANT VALLEY SCHOOL DISTRICT,<br><br>Defendant. | CIVIL ACTION NO. 3:25-cv-01526<br><br>(SAPORITO, J.) |

# MEMORANDUM

This civil action was brought on behalf of a minor child, Cheyenne H. ("C.H."), by and through her parents, and her parents individually. Doc. 14. C.H. was a student in the Pleasant Valley School District ("district"), where she is eligible to receive special education services as a child with disabilities. *Id.* at 3. The action commenced when the plaintiffs filed their complaint in this Court on August 18, 2025. Doc. 1.

On October 28, 2025, the district filed a motion to dismiss pursuant to Rules 8, 10, and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 10. On May 8, 2026, this Court granted the motion to dismiss and permitted the plaintiffs to file an amended complaint correcting the

previous deficiencies. Doc. 13. The plaintiffs timely filed their three-count amended complaint on May 29, 2026. Doc. 14.

The plaintiffs now bring this action asserting claims against the district under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation act of 1973 ("Section 504"), American with Disabilities Act of 1990 ("ADA"), and Title IX of the Educational Amendments of 1972 ("Title IX"). Doc. 14, at 2; 20 U.S.C. § 1400 *et seq.*; 42 U.S.C. § 12131 *et seq.*; 29 U.S.C. § 794; 20 U.S.C. § 1681 *et seq.* The plaintiffs allege that (1) the district did not comprehensively evaluate C.H. or properly identify her disabilities and therefore the administrative decision to deny her Free Appropriate Public Education ("FAPE") was erroneous, and (2) the district's deliberate indifference to the sexual harassment C.H. experienced entitles the plaintiffs to monetary damages. Doc. 14, at 2, 9, 24-28.

The district has filed a partial motion to dismiss for failure to state a claim upon which relief can be granted with respect to Count III of the amended complaint. Doc. 16. Count III only concerns the allegation regarding deliberate indifference under Title IX and this opinion will only address the facts relevant to that claim. Doc. 14, at 26. The motion is fully

briefed and ripe for decision.[1] Doc. 17, 18.

## I. FACTUAL ALLEGATIONS

At the times for which the plaintiffs seek a remedy (start of 2021-22 school year to September 27, 2023), C.H. resided in and attended school in the district. Doc. 14, at 3. C.H. is an eligible student with disabilities who qualifies for special education services. *Id.* She specifically has learning disabilities in three areas of reading: (1) basic reading, (2) reading fluency, and (3) reading comprehension. *Id.* at 9. Although she has average cognitive abilities, she was three to five years behind in reading when attending school in the district. *Id.* Due to this, C.H. qualified to have her education supplemented through an Independent Educational Plan ("IEP"). *Id.* at 11.

From November 2022 through May 2023, C.H. stated that a classmate would engage in unwanted sexual contact with her during school and classes. *Id.* at 16. Specifically, the classmate would touch C.H. in places such as her upper inner thigh. Eventually, C.H. reported these incidents to the police. *Id.* She told the police that she had provided more

[1] The district has elected not to file a reply brief in response to the plaintiffs' opposition brief.

than 20 written reports regarding the classmate's actions to the district's office. *Id.* In addition, she reported to the police that she tried to make multiple verbal reports to the district staff but was turned away because the staff was either unavailable or unreceptive to what C.H. was reporting. *Id.* One written report received by the district on May 24, 2023, read: "[Peer] has been touching me in weird ways and it is makeing [sic] me feel uncomfortable [sic]. I have asked her to stop many times and wolt [sic] stop. Mrs. Santore saw I was down and I told her what was wrong." *Id.*

C.H. told her parents of the assaults on May 25, 2023. *Id.* Once C.H. told her parents, they reported it to the police the following day. *Id.* Although the district claims it only received two written reports in May 2023, even then they did not open an investigation under their own policies or Title IX, and did not notify C.H.'s parents. *Id.* at 17.

C.H. states that she was struggling at the end of the 2022-2023 school year and did not want to attend school because of the unwanted sexual contact by her classmate. *Id.* The district further failed to keep the students in separate classes despite its promise to do so, and in fact when the new school year started in Fall of 2023, both students were placed in

the same class. *Id.*

On September 14, 2023, C.H.'s mother emailed the district's special education teacher asking to meet and go over C.H.'s IEP. *Id.* The purpose of the meeting was to address C.H.'s struggles in class and specifically that the current year was not going well for C.H. *Id.* Eventually, on September 27, 2023, C.H.'s parents decided to withdraw C.H. from the district when the district continued to place C.H. and the student in the same class. *Id.* The plaintiffs allege that because of the district's misconduct in handling the sexual harassment of C.H., it caused her to struggle, not want to attend, and eventually transfer to a charter school. *Id.* at 27.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial

plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public records of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

In Count III of the amended complaint, the plaintiffs bring a claim for damages against the district under Title IX. Based on its failure to protect C.H. from the repeated incidents described above, in which a student would repeatedly make unwanted sexual contact with C.H in school and class, and its failure to put both students in a separate class, the plaintiffs allege that the district was deliberately indifferent to the student's sexual harassment of C.H.

Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied private cause of action for monetary damage under Title IX. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283-84 (1998). To state a claim of deliberate indifference for student-on-student sexual harassment under Title IX, a plaintiff must show that:

(1) The defendant received federal funds; (2) sexual harassment occurred; (3) the harassment took place under "circumstances wherein

the funding recipient exercised substantial control over both the harasser and the context in which the harassment occurred"; (4) the funding recipient had "actual knowledge" of the harassment; (5) the funding recipient was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it could be said to have deprived the victims of access to the educational opportunities or benefits provided by the schools. *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 365 (W.D. Pa. 2008) (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 645, 650 (1999) (ellipsis and brackets omitted)).

The district does not contest the first element. They received and continue to receive federal financial assistance. They also do not contest the second element. The amended complaint alleges that C.H. was subjected to sexual harassment when her classmate would, on multiple occasions, make unwanted sexual conduct with C.H. in places such as her upper inner thigh. Doc. 14, at 16.

With respect to the third element, the amended complaint alleges that the harassment occurred during class and within the physical confines of the school. Doc. 14, at 16. We find that in the classroom

context, the district had direct and substantial control over both C.H. and the harasser. During class, students are directly supervised by district staff and the district has the power to separate students at any time. *See Davis*, 526 U.S. 629 at 646-47 (holding that when the misconduct occurs during school hours and in the classroom, a district retains substantial control over both the context of harassment and the harasser).

With respect to the fourth element, a school district may only be found to be deliberately indifferent to *known acts* of student-on-student sexual harassment—the "actual notice" required by Title IX cannot be based on the mere possibility that such harassment might occur. *See Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005); *see also Davis*, 526 U.S. at 650 (holding that "funding recipients are properly held liable in damages only where they are deliberately indifferent to [student-on-student] sexual harassment of which they have *actual knowledge*") (emphasis added); *id.* at 648 ("[F]unding recipients are deemed 'deliberately indifferent' to acts of student-on-student [sexual] harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the *known* circumstances.") (emphasis added). Additionally, notice must be received by an

"appropriate person" who has authority to take corrective action to end the harassment. *See Gebser*, 524 U.S. at 290. The complaint alleges that C.H. provided more than 20 written incident reports to the district's office. Doc. 14, at 16. Two reports of the sexual harassment are reflected in the district's records on May 23 and 24, 2023. *Id.* Additionally, a district principal testified under oath to his actual knowledge of the harassment. *Id.* at 26; *see Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002) (holding that a school principal will ordinarily be an "appropriate person" under Title IX). C.H. further alleges that other district staff such as a guidance counselor and teacher were aware of the harassment. *Id.* at 27. Given these facts, we find that the district had actual knowledge and notice of the harassment under Title IX.

With respect to the fifth element, to make a showing of deliberate indifference, the funding recipient's response to the harassment must be clearly unreasonable in light of the known circumstances. *Davis*, 526 U.S. at 648. Additionally, the alleged indifference must further "cause students to undergo harassment or make them liable or vulnerable to it." *See Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689, 705 (M.D. Pa. 2018) (quoting *Davis*, 526 U.S. at 644-45). The plaintiffs pleaded that

the district acknowledges receiving two reports of harassment on May 23 and 24, 2023. Doc. 14, at 16. From this point onward, the district never initiated an investigation either under Title IX or their own policies. *Id.* at 17. Additionally, the district put both C.H. and her harasser in the same class when they returned to school after the summer (after promising not to do so). *Id.* We find that this combination of facts is at a minimum sufficient to plead a plausible case of deliberate indifference under Title IX.

First, considering the failure to conduct an investigation, courts have found that inexplicable delays in investigating and handing down sanctions can rise to the level of deliberate indifference. *See generally McAvoy v. Dickinson Coll.*, 115 F.4th 220, 229-30 (3d Cir. 2024); *Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1296-97 (11th Cir. 2007). Surely if a delay in investigation can result in a plausible finding of deliberate indifference, facts alleging no investigation was undertaken (even after knowledge that the police were investigating the incident) can similarly show that the district's actions in this case were clearly unreasonable.

Second, considering the district's failure to separate C.H. and her

harasser when they returned for the summer, at a minimum this subjected C.H. to further harassment or made her vulnerable to it. *See Davis*, 526 U.S. at 644-45. When evaluating post-harassment responses, courts have looked at "whether a school's response was reasonably calculated to prevent reoccurrence of the harassment and also at the school's efforts to ensure the survivor's continued access to education in the wake of the reported abuse." *Doe v. N. Penn Sch. Dist.*, 636 F. Supp. 3d 519, 529 (E.D. Pa. 2022). Additionally, courts should be cognizant that grade and high schools are expected to exercise more control and oversight over students as compared to universities. *McAvoy*, 115 F.4th at 231-32. The amended complaint alleges that the district took no steps to actually separate C.H. from her harasser despite promising to do so. Doc. 14, at 17. Additionally, C.H. alleges that because of the harassment she transferred to a cyber charter school at the beginning of the 2023-2024 school year. *Id.* at 27. The failure to separate the students and C.H.'s subsequent transfer shows the district's failure to reasonably prevent reoccurrence of the harassment and ensure that C.H. has continued access to education in the district. *See MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 578-80 (W.D. Pa. 2019) (holding the school's

failure to address the harassment and the student's subsequent transfer constituted deliberate indifference).

With respect to the sixth element, to be actionable, the student-on student sexual harassment must be "sufficiently severe, pervasive, and objectively offensive as to deprive the victim of access to the school's educational benefits and services."' *Davis*, 526 U.S. at 650. Determining what is severe, pervasive, and offensive is a fact intensive exercise that "depends on a constellation of surrounding circumstances, expectations, and relationships." *Id.* at 651. With respect to the school setting, courts should bear in mind that children may interact in a manner that would be unacceptable among adults. *Id.* Generally in this setting, damages are not available for "simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender." *Id.* Additionally, courts should consider the frequency of the harassment and if it involved actual physical contact. *Katchur v. Thomas Jeffereson Univ.*, 354 F. Supp. 3d 655,664 (E.D. Pa. 2019). To show that there is a deprivation of access to educational benefits and services, there must be a showing that the harassment "so undermines and detracts from the victims' educational experience, that the victim-students are

effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 651.

A threshold issue that first must be answered is when the actual harassment of C.H. began. The amended complaint alleges that she was harassed by the student constantly from November 2022 through May 2023. Doc. 14, at 16. It also pleads that C.H. had told the police that she provided the district with more than 20 written incident reports and attempted to make more verbal reports with district staff. *Id.* We decline at this stage to agree with the district's request to find these facts inadequate to plead long-term harassment or the district's knowledge of it. *See* Doc. 17, at 8. Although we are not required to accept facts that lead to "unwarranted conclusions," taking the factual pleadings in the light most favorable to the plaintiffs, we find that reporting to the police that these reports happened makes it plausible that the harassment happened for an extended period of time and the district had knowledge of it even if the district maintains that it only received two written reports. Additionally, the written reports received by the district clearly state that this was not an isolated incident and had been happening for some time, further strengthening the inference that the harassment was

for an extended period of time. *See* Doc. 14, at 16.

With this timeline in mind, we find that as alleged in the amended complaint, the harassment of C.H. was sufficiently "severe, pervasive, and objectively offensive as to deprive [C.H] of access to the school's educational benefits and services" to plausibly plead a case under Title IX. *See Davis*, 526 U.S. at 650. First, the harassment involved offensive physical contact and continued over a significant period. Although we are cognizant that the contact occurred between younger students, persistent offensive contact on the legs and upper thighs rises above the level of name calling and gender specific teasing that the *Davis* court contemplated. *See Id.* at 651. Additionally, the plaintiffs alleging that C.H. transferred schools at the beginning of the 2023-2024 school year is dispositive with respect to deprivation of educational benefits and services. Doc. 14, at 27. Courts have held that the decision "to transfer schools following [sexual assault] necessarily inserts a factual question regarding whether the deprivation was casually related to [the] harassment." *Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp. 3d 306, 322 (M.D. Pa. 2023). When the district failed to separate the students at the start of the school year, C.H. continued to struggle, did not want to

attend, and eventually felt forced to withdraw from the district. Doc. 14, at 27. This is enough at the pleading stage to show educational deprivation.

## IV. CONCLUSION

For the foregoing reasons, we will deny the district's motion to dismiss Count III of the amended complaint.

An appropriate order follows.

Dated: November 2, 2026

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States District Judge